```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------  X
                                                                  :
SHAUN LYNDA,                                                      :
                                                                  :
                            Plaintiff,                            :   MEMORANDUM DECISION
                                                                  :   AND ORDER
            - against -                                           :
                                                                  :   20-cv-47 (BMC)
JETBLUE AIRWAYS CORPORATION,                                      :
                                                                  :
                            Defendant.                            :
----------------------------------------------------------------  X
```

**COGAN**, District Judge.

While awaiting takeoff on his JetBlue flight from Barbados to New York, plaintiff allegedly suffered emotional and psychological injuries as a result of being mistreated by airline personnel. Plaintiff now brings this lawsuit for violations of the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. § 44902, as well as for common law breach of contract, false imprisonment, intentional infliction of emotion distress, assault, and battery. Defendant moves to dismiss.

Because there is no private right of action under the FAA, the claim brought under that statute is dismissed. Furthermore, because the Montreal Convention preempts all claims within its scope and does not permit compensation for purely emotional injuries, plaintiff's claims for intentional infliction of emotional distress, assault, battery, and false imprisonment are dismissed. Although plaintiff's claim for breach of contract is preempted by Article 19 of the Montreal Convention, it may go forward as a claim for "delay" under that provision.

## BACKGROUND

As alleged in his complaint, plaintiff purchased a ticket to travel on JetBlue Flight 1562 from Grantley Adams International Airport in Barbados to John F. Kennedy International Airport in New York. Plaintiff boarded the plane, but before it took off, there was a delay due to

a family of four rearranging their seats.  That situation was apparently resolved when the airline allowed the whole family to sit together at the front of the plane.

Having witnessed the rearrangement, plaintiff "questioned why the family of four was rewarded with an upgrade of seats," and a JetBlue employee responded by telling plaintiff it was "none of your business."  A second JetBlue employee subsequently offered plaintiff a seat upgrade as consolation for his colleague's unprofessional response.  But when plaintiff attempted to move seats in accordance with the upgrade, the first employee told plaintiff to return to his initial seat.  Plaintiff did as he was told.

After plaintiff had resettled himself in his original seat, the first employee "knelt down on one knee beside [p]laintiff and began patting his leg and inquired 'Are you going to behave yourself?'"  Plaintiff characterizes this interaction as being treated like he "were some type of animal or petulant child."  Upon responding to the employee by noting her rudeness, the employee went to the front of the plane to speak with the captain about plaintiff's behavior.  Plaintiff maintains that at all times he had complied with the employee's requests and never raised his voice.  Nonetheless, plaintiff was ordered to deplane and was escorted from the gate to the Immigration office, where he was held in custody and questioned until being released.

As a result of the foregoing, plaintiff alleges that he suffered additional costs for lodging while awaiting another flight back to New York; loss of business income due the delay in returning to New York; the inability to spend Thanksgiving with his family, as planned; and embarrassment and public humiliation.  He further states that his "damages are solely due to the willful misstatements, racially motivated actions, carelessness, recklessness and negligence of the [d]efendant."

2

Defendant moves to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks and citations omitted). Said otherwise, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

In conducting the above analysis, the Court must accept as true all of the well-pleaded allegations contained in the complaint. Iqbal, 556 U.S. at 678. But this tenet "is inapplicable to legal conclusions." Id. "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

As an initial matter, there is no private right of action under the FAA. See Drake v. Lab. Corp. of Am. Holdings, 458 F.3d 48, 57 (2d Cir. 2006) ("The remedies provided by the Act do not include a private right of action for violations of FAA regulations."); Bonano v. Easte Caribbean Airline Corp., 365 F.3d 81, 86 (1st Cir. 2004) ("[I]t is abundantly clear that Congress,

in crafting the [FAA], intended public, not private, enforcement. Consequently, we join a long list of other courts that have concluded that neither the Act nor the regulations create implied private rights of action."); Goonewardena v. AMR Corp., No. 08-cv-4141, 2008 WL 5049904, at *3 (E.D.N.Y. Nov. 25, 2008) ("[N]either the FAA nor the [Airline Deregulation Act] provides a private right of action."). Thus, plaintiff's FAA claim necessarily fails at its inception and must be dismissed. The cases plaintiff cites ostensibly to the contrary either were decided prior to the Supreme Court's decision in Alexander v. Sandoval, 532 U.S. 275, 287 (2001) (abandoning the *ancien regime* of judicially-created rights of action), or did not address the question.[1]

Most of the remaining state law claims are preempted by the "Montreal Convention." See Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734. Specifically, Article 29 of the Montreal Convention provides that, "[i]n the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention." The Supreme Court has interpreted that provision to "preclude[] passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng, 525 U.S. 155, 174-75 (1999). However, only a state law claim that falls within the "substantive scope" of the Convention is preempted. See id. at 172 (*colatus*[2]).

---

[1] Plaintiff cites the post-Sandoval case Doe v. Delta Airlines, Inc., 129 F. Supp. 3d 23, 39 (S.D.N.Y. 2015), but that decision does not address whether a private right of action can be implied under the FAA. Moreover, it doesn't appear that the plaintiff in Doe even sued under the FAA; the statute was only discussed in the context of preemption.

[2] I.e., edited citation.

In determining whether a claim falls within the scope of the Convention, courts "are directed to look to [its] liability provisions." Oparaji v. Virgin Atlantic Airways, Ltd., No. 04-cv-1554, 2006 WL 2708034, at *2 (Sept. 19, 2006) (citing King v. Am. Airlines, Inc., 284 F.3d 352, 358 (2d Cir. 2002)). For example, "passenger injuries occurring before any of the operations of embarking or disembarking" are outside the scope of the Convention and are therefore not preempted. See Tseng, 525 U.S. at 158 (internal quotation marks omitted).

Plaintiff's claims for assault, battery, and intentional infliction of emotional distress are preempted because the set of incidents underlying these tort claims "took place on board the aircraft or in the course of any of the operations of embarking or disembarking." See Montreal Convention, Art. 17.[3] Moreover, as plaintiff does not claim to have suffered any physical injuries and is seeking damages for emotional injuries, these claims must be dismissed because "mental injuries are recoverable under Article 17 only to the extent that they have been caused by bodily injuries." See Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 400 (2d Cir. 2004); see also Tseng, 525 U.S. at 161 ("[R]ecovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' Art. 17, 49 Stat. 3018, if not allowed under the Convention, is not available at all.").

Plaintiff's claim for false imprisonment against JetBlue is also preempted by the Montreal Convention. Plaintiff alleges that defendant's actions caused him to be "detained and questioned by police in [I]mmigration, in another Country." However, the sequence of events

---

[3] Although Article 17 applies to "*accident[s]* which caused the . . . injury" (emphasis added), courts have long interpreted "accident" in the Warsaw and Montreal Convention context as applying to any "unusual event . . . external to the passenger."). See Tseng, 525 U.S. at 172; Air France v. Saks, 470 U.S. 392, 405-06 (1985) ("Any injury is the product of a chain of causes, and we require only that the passenger be able to prove that some link in the chain was an unusual or unexpected event external to the passenger."). Thus, intentional torts committed by airline personnel or even other passengers or terrorists may fall under the broad interpretation of "accident" applied in these cases. See, e.g., Carey v. United Airlines, 255 F.3d 1044, 1048-51 (9th Cir. 2001) (intentional and negligent infliction of emotional distress by flight attendant was an "accident"); Wallace v. Korean Air, 214 F.3d 293, 299-300 (2d Cir. 2000) (sexual assault by co-passenger was an "accident").

that led to plaintiff's detainment shows that he was removed from the flight and brought to the Immigration office by the police, not by airline personnel. Specifically, plaintiff says that he "was escorted from JetBlue Flight 1562 at the behest of [d]efendant by the police and was brought to Immigration." Because the airline's last act, according to the complaint, was to summon law enforcement to the plane to effect plaintiff's removal, the entirety of its conduct "took place on board the aircraft or in the course of . . . the operations of embarking." See Montreal Convention, Art. 17. Perhaps if a JetBlue employee had himself escorted plaintiff from the plane and brought him to the Immigration office, a freestanding claim for false imprisonment could lie against the airline. That is not the case here.

Once again, applying the rule that "a carrier may be held liable under Article 17 for mental injuries only if they are caused by bodily injuries," plaintiff's lack of bodily injury from the airline's conduct bars recovery. See Ehrlich, 360 F.3d at 400. Plaintiff's "claim" for punitive damages is likewise precluded by Article 29's directive that "punitive, exemplary or any other non-compensatory damages shall not be recoverable."

Arguing against dismissal of these claims, plaintiff directs the Court's attention to Article 21(2) of the Convention, which provides:

> The carrier shall not be liable for damages arising under paragraph 1 of Article 17 to the extent that they exceed for each passenger 100 000 Special Drawing Rights if the carrier proves that:
>
> (a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or
>
> (b) such damage was solely due to the negligence or other wrongful act or omission of a third party.

Plaintiff contends that this provision "does [not] insulate [d]efendant from liability when it acts in a wrongful manner, as in this case." In other words, plaintiff believes that because he is alleging willful misconduct by the airline, his claims are not preempted by the Montreal

6

Convention. But plaintiff misunderstands this portion of Article 21 – it merely limits the *amount* of liability, not the fact of it, where the airline is not at fault. To be sure, had plaintiff sustained a physical injury as a result of the carrier's misconduct, his damages would not be limited by Article 21. However, plaintiff does not allege any physical harm from his interactions with JetBlue, and thus Article 21 is irrelevant for these claims.

Finally, plaintiff alleges that JetBlue "breached [the] contract by failing to provide [p]laintiff the service and use of transport on JetBlue Flight 1562 from Grantley Adams International Airport to John F. Kennedy International Airport in New York on November 28, 2019." However, after plaintiff had been removed from Flight 1562, "his ticket was rebooked on the next available flight at no additional cost to him." This development is important because courts draw a distinction under the Convention between non-performance of a contract and a delay in fulfilling the obligations of a contract. See In re Nigeria Charter Flights Contract Litig., 520 F. Supp. 2d 447, 453-54 (E.D.N.Y. 2007) (citing cases that distinguish between delay and non-performance of a contract under the Warsaw and Montreal Conventions).

Here, we are dealing with "delay" because JetBlue subsequently rebooked plaintiff on a different flight, free of charge. See Ikekpeazu v. Air France, No. 04-cv-711, 2004 WL 2810063, at *2 (D. Conn. Dec. 6, 2004); Fields v. BWIA Int'l Airways Ltd., No. 99-cv-2493, 2000 WL 1091129, at *3 (E.D.N.Y. July 7, 2000). Causes of delay run the gamut from the mistaken cancellation of a ticket, see Alam v. P.I.A., No. 92-cv-4356, 1995 WL 17201349, at *3 (S.D.N.Y. July 27, 1995), to an airline's "refusal to allow plaintiff to board a flight . . . due to an alleged security problem with [a] passport," see Ikekpeazu, 2004 WL 2810063 at *1.

In Ikekpeazu, for example, an Air France employee prevented the plaintiff from boarding his flight due to some unidentified "security problem" with his passport. Id. The plaintiff's

7

luggage was removed from the plane and he had to wait six days before taking another Air France flight back to the United States. Id. As a result, the plaintiff, who was a surgeon, "was forced to cancel all surgeries, procedures, and consultations he had scheduled for the upcoming week." Id. The court held that the plaintiff had stated a claim for delay under Article 19 of the Montreal Convention. Id. at *2.

Similarly, in Peralta v. Continental Airlines, Inc., No. 98-cv-1252, 1999 WL 193393, at *1 (N.D. Cal. Mar. 30, 1999), the plaintiff was ordered to leave the plane prior to takeoff because a flight attendant believed that his ticket had been altered. By the time the matter had been straightened out, it was too late for the plaintiff to re-board and he ended up having to take the next available flight to Costa Rica. Id. As a result of missing his flight, the plaintiff's business deal had "fallen apart." The court held that the claim was preempted by Article 19 of the Warsaw Convention (the Montreal Convention's predecessor), but dismissed the claim on summary judgment because the airline had "taken all necessary steps to avoid damage." Id. at *2.[4]

Plaintiff has pleaded facts tending to demonstrate that he was "delay[ed] in the carriage by air" of his person and that he sustained damages as a result of the delay. Moreover, his complaint sufficiently alleges that JetBlue did not act reasonably to avoid such delay. The claim for breach of contract is thus preempted by Article 19 but is sufficiently pleaded to constitute a cause of action under that provision. Plaintiff's sole recovery, if he prevails, will be for his alleged loss of business income and lodging costs.

---

[4] Article 19 of the Montreal Convention provides:

> The carrier is liable for damage occasioned by delay in the carriage by air of passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

## CONCLUSION

Defendant's [13] motion to dismiss is granted in part and denied in part. Counts II, III, IV, V, VI, and VII are dismissed. Count I is preempted by Article 19 of the Montreal Convention, and shall proceed under that section as a claim for economic loss.

**SO ORDERED.**

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       June 10, 2020